# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

| | |
|---|---|
| **N.F.**, a disabled minor, by and through her mother, guardian and next friend, **LAKESHA RENEE RICE,** and **LAKESHA RENEE RICE**, individually**;** <br><br>     Plaintiffs, <br><br> v. <br><br> **TUSCALOOSA CITY BOARD OF EDUCATION,** a local governmental agency **SAMUEL LEE JONES,** an individual, <br><br>     Defendants | CIVIL ACTION NO.: <br> _____ <br><br> **Jury Trial Demanded** |

## COMPLAINT

### PRELIMINARY STATEMENT REGARDING JURISDICTION AND CLAIMS

1.      This is a personal injury and a civil rights action brought to vindicate the plaintiffs' rights under the United States Constitution, the statutory laws of the United States, and the common and statutory laws of the State of Alabama;

2.      The civil rights action(s) is/are brought pursuant to Section 504 of the Federal Rehabilitation Act of 1973, 29 U.S.C. 794, and its related amendments, and also Title II of the Federal Americans with Disabilities Act (ADA) ,42 U.S.C. 12132, and the ADA Amendments Act of 2008;

3.      The personal injury claim is brought on behalf of the disabled, minor plaintiff N.F., and pursuant to Alabama common law and Alabama statutory law;

4.      This Court has subject matter jurisdiction over these claims pursuant to 28 U.S.C. 1331 (Federal Causes of Action) and 28 U.S.C. 1367 (Supplemental Jurisdiction);

5.      The Alabama personal injury claim is part of the same case or controversy as the Federal claims, and arises from the same common nucleus of operative facts.  Accepting jurisdiction over the Alabama personal injury claim and its related defendant will promote judicial efficiency by resolving all interconnected claims in a single proceeding;

6.      Section 504 of the Federal Rehabilitation Act protects the rights of students with disabilities in programs and activities that receive federal funds, and requires local school systems to provide equal access to education for people with disabilities;

7.  Title II of the ADA prohibits discrimination by local school systems against people with disabilities;

8.  The acts/omissions giving rise to the civil rights violations and the Alabama personal injury action all took place within Tuscaloosa County, Alabama;

## STATEMENT OF THE PARTIES

9.  The Plaintiffs reallege and incorporate by reference each of the above preceding paragraphs with the same force and effect as if fully set out in specific detail herein;

10. The Plaintiff, N.F. is an eighteen year old minor and is mentally and emotionally handicapped, having been diagnosed with profound and non-verbal autism, and is a resident citizen of the State of Alabama ;

11  LaKesha Renee Rice is the mother, next friend and guardian of N.F.  She was appointed as legal guardian by the Probate Court of Tuscaloosa County, Alabama, and is a resident citizen of the State of Alabama;

12. Lakesha Renee Rice ("Rice") brings this action on behalf of her disabled daughter N.F., and also makes claim for damages in her individual and personal capacity;

13. The Defendant Tuscaloosa City Board of Education, ("BOE") is a local governmental agency operating within the City of Tuscaloosa, Alabama in Tuscaloosa County;

14. Defendant Samuel Lee Jones ("Jones") is an individual citizen of the State of Alabama and is above the age of nineteen (19);

## STATEMENT OF FACTS

15. Plaintiff N.F. suffers from profound autism spectrum disorder and is non-verbal.  She has the intelligence equivalent of a three (3) year old child.;

16. On January 29, 2025, N.F. was enrolled as a special education student in the Tuscaloosa City School System.

17. N.F. was the subject of an Individualized Education Program (IEP). Because of her disabilities, and in accordance with her IEP, N.F. was entitled to be provided transportation to and from school on a daily basis;

18. On January 29, 2025 defendant Jones was an employee/agent of defendant BOE and was the driver of the school bus owned/operated by defendant BOE taking N.F. to and from school as per the I.E.P. agreed to by defendant BOE;

19.     As per rules/regulations N.F. was strapped into her seat when on the bus. This is/was for her protection and safety but also prevented N.F. from escaping or otherwise protecting herself on 01/29/2025;

20.     Also, as per rules/regulations, in addition to driver Jones, there was also a second and a third employees/agents of the defendant BOE aboard the bus on 01/29/2025 in order to act as aids;

21.     The identities of the other two (2) BOE employees/agents has been requested by plaintiffs but not disclosed by the defendant BOE;

22.     On January 29, 2025, while N.F. was strapped into her seat on the bus, defendant driver Jones, upon information and belief, attempted to administer corporal punishment, but did so in an abusive, violent and "over-the-top" manner;

23.     Videotape of the incident of January 29, 2025, shows defendant driver Jones punching and slapping and striking N.F. with his hands and belt approximately twenty-two (22) or twenty-three (23) times while screaming at N.F. Videotape shows that the beatings took place in at least four (4) different episodes over the course of seven (7) to eight (8) minutes. Videotape of the incident also demonstrates that the unidentified BOE employees/agents acting as aids did nothing to prevent the extreme corporal punishment beating inflicted by defendant Jones, and, presumably, watched. Not once during the seven (7) to eight (8) minute incident can the two (2) as-yet-unidentified aids be seen or heard to attempt to stop defendant Jones and/or prevent him from beating N.F. further. In fact, one of the unidentified aids can be heard on the videotape "egging on" defendant Jones and/or inciting him to further anger, and the other aid can be heard near the end of the videotape scolding N.F. calling her a "bad girl" and telling her she was "going to be kicked off the bus" and "in trouble";

24.     It is not known if defendant Jones and/or the two (2) aids had mistreated N.F. in a similar or other fashion on any day prior to January 29, 2025, because N.F. is non-verbal and cannot communicate any such mistreatment. However, the video of the events of January 29, 2025, are the only video, and the only incident, of which the plaintiff LaKesha Renee Rice is aware;

25.     Since the date of the assault on January 29, 2025, N.F. has demonstrated a change in personality and behavior. She has been "acting out" more often, is harder to control/manage and, according to her mother, is markedly more aggressive with her. This behavior is contrasted to N.F.'s behavior and personality prior to the beatings on 01/29/2025 in that N.F. had never been physically aggressive with her mother before;

26.     These behavioral and personality changes have negatively affected plaintiff N.F.'s ability to take advantage of educational opportunities to which she would otherwise be able to enjoy, and/or to receive items and services to which plaintiff N.F. is entitled to receive as per her I.E.P.;

27.     Since the events of January 29, 2025 minor plaintiff N.F. was not able to ride the school bus to and from school as required by the terms of her I.E.P., and her mother Lakesha Renee

Rice transported her daughter to and from school for the remainder of the school 2025 school year;

28. Minor plaintiff N.F. is entitled to be and is currently enrolled in public school within the City of Tuscaloosa school system for the Fall, 2025 semester and is entitled to an I.E.P.;

29. Plaintiff Lakeesha Renee Rice, on behalf of her daughter N.F. has repeatedly requested that the defendant BOE meet with her for the purpose of providing an I.E.P. for N.F. for the Fall, 2025 semester;

30. Defendant BOE has failed/refused to provide minor plaintiff N.F. with an I.E.P. for the Fall, 2025 semester;

31. Upon information and belief, N.F., through an appropriate I.E.P., would be entitled to, among other things, transportation to and from school on a daily basis during this the Fall, 2025 semester;

32. Plaintiff Lakeesha Renee Rice is still transporting her daughter N.F. to and from school on a daily basis, at great personal cost of time and money to herself;

## COUNT I

### VIOLATION OF THE REHABILITATION ACT OF 1973 and the AMERICANS WITH DISABILITIES ACT

33. The Plaintiffs reallege and incorporate by reference each of the above preceding paragraphs with the same force and effect as fully set out in specific detail herein;

34. The Rehabilitation Act of 1973 provides a private cause of action prohibiting discrimination against handicapped individuals under any program or activity receiving Federal financial assistance. Rehab. Act 1973, § 504, as amended; 29 U.S.C.A. § 794;

35. Title II of the Americans with Disabilities Act provides a private right of action for violations. Barnes v. Gorman, 536 US 181, 184-185 (2002);

36. Section 504 of the Rehabilitation Act prohibits discrimination against qualified individuals with disabilities by any program or activity receiving federal financial assistance;

37. Title II of the ADA protects and requires local schools to accommodate the needs of students with disabilities;

38. Upon information and belief the defendant BOE receives federal funding and is subject to and must comply with Title II of the ADA and Section 504 of the Rehabilitation Act;

39. This Count is brought against defendant BOE, as a recipient of federal funds, and defendant Jones as its employee/agent, for monetary damages and other relief available under §504 of the Rehab Act;

40. This Count is brought against defendant BOE, as a recipient of federal funds, and defendant Jones as its employee/agent, for monetary damages and other relief available under Title II of the ADA;

41. N.F. is disabled within the meaning of the Rehabilitation Act and also the ADA;

42. In 2002 the U. S. Supreme Court stated in Barnes v. Gorman, 536 U.S. 181 (2002) that the remedies for violations of the Rehabilitation Act are "co-extensive" with the remedies available under the ADA. Because much of the terminology in the ADA mirrors that in the Rehabilitation Act, the Federal courts have consistently looked to cases construing Section 504 for guidance when deciding ADA challenges, and vice versa. See, for example, Cummings v. Norton, 393 F.3d 1186, 1190 n. 2 (10th Cir. 2005);

43. The actions of defendant Jones of January 29, 2025, as described previously herein, amount to a violation of both the Rehabilitation Act, Section 504, and Title II of the ADA;

44. The actions of the two (2) as-yet-unidentified aids of January of 29, 2025, as described previously herein, amount to a violation of both the Rehabilitation Act, Section 504, and Title II of the ADA;

45. The physical abuse and denial of rights arising under section 504 of the Rehabilitation Act and Title II of the ADA, and by the laws and constitution of the United States, entitles plaintiff N.F. to recovery against the defendants, separately and severally, pursuant to §504 of the Rehabilitation Act and Title II of the ADA;

46. At all times pertinent hereto defendant Jones was acting within the line and scope of his employment/agency by/for the defendant BOE, and in accordance with training and/or lack thereof;

47. At all times pertinent hereto the as-yet-unidentified two (2) aids present on the bus on January 29, 2025, were also acting within the line and scope of their employment/agency by/for the defendant BOE, and in accordance with training and/or lack thereof;

48. The extreme corporal punishment administered by defendant Jones in the presence of the two (2) unidentified aid violated the Rehabilitation Act and/or the Americans with Disabilities Act, separately and severally, in that it acted to deny N.F. a meaningful opportunity for education, and other opportunities related thereto, which she would have otherwise enjoyed. Further, N.F. suffered physical pain and suffering, physical damages and mental and emotional trauma;

49. By virtue of special circumstances and under the conditions present on January 29, 2025, the two (2) unidentified aids were under a duty to:

a. anticipate the situation resulting in extreme corporal punishment by defendant Jones, and take active steps to defuse and/or de-escalate and/or otherwise prevent the punishment from occurring;

b. refrain from inciting defendant Jones to further anger, and also refrain from verbally harassing and bullying N.F. after having already received corporal punishment which amounted to an extensive beating by defendant Jones;

c. come to the aid of and prevent the corporal punishment beatings (all or part) inflicted on January 29, 2025, and/or prevent the ongoing nature of the punishment beating against N.F. who was not able to protect herself, or understand what was going on, by virtue of her handicap and having been strapped into her seat;

50. The acts/omissions of the two (2) unidentified aids amount to a violation of the Rehabilitation Act and/or the Americans with Disabilities act, separately and severally, and to deny N.F. a meaningful opportunity for education, and other opportunities related thereto, which she would have otherwise enjoyed. Further, N.F. suffered physical pain and suffering, physical damages and mental and emotional trauma;

51. The defendant BOE violated the Rehabilitation Act and/or the Americans with Disabilities Act, separately and severally, by and through its failure to:

a. reasonably/adequately train defendant Jones regarding the special needs of N.F. and other disabled students like her;

b. reasonably/adequately train defendant Jones to handle and/or deal with and/or reasonably respond to the "ticks" and/or other behavioral idiosyncrasies of special needs students such as N.F. without losing his temper and beating her/them;

c. reasonably/adequately train the two (2) unidentified aids regarding the special needs of N.F. and other disabled students like her, including but not limited to, how to handle and/or deal with and/or respond to the "ticks" and/or other behavioral idiosyncrasies of special needs students such as N.F. without inciting others to further violence and/or verbally bullying and/or intentionally shaming N.F.;

d. reasonably/adequately supervise and/or monitor defendant Jones;

e. reasonably/adequately vet defendant Jones prior to his being hired and/or assigned to drive a bus serving the needs of handicapped, special-needs students like N.F.;

f. reasonably/adequately vet the two (2) unidentified aids prior to hire and/or assignment to act as aids on a bus serving the needs of handicapped, special-needs students like N.F.;

6

    g.    reasonably/adequately train the two (2) unidentified aids regarding anticipating the incident of January 29, 2025, and/or similar incidents and taking steps to defuse and/or de-escalate the situation and/or otherwise prevent the extreme corporal punishment;

    h.    reasonably/adequately monitor the two (2) unidentified aids;

    i.    prevent defendant Jones from driving a bus serving the needs of handicapped, special-needs children, some of whom may have behavioral issues and/or "ticks" associated with their disabilities;

    j.    otherwise prevent the physical abuse which occurred on January 29, 2025;

    k.    failure to provide minor plaintiff N.F. transportation to and from school for the remainder of the 2025 school year;

    l.    failure to provide minor plaintiff N.F. transportation to and from school for the Fall, 2025 school semester;

    m.    failure to provide the minor plaintiff with an Individualized Education Program (I.E.P.) for the Fall, 2025 school semester;

52. All of the above violated the Rehabilitation Act and/or the Americans with Disabilities Act, separately and severally, in that it acted to deny N.F. a meaningful opportunity for education, and other opportunities associated therewith, which she would have otherwise enjoyed. Further, N.F. suffered physical pain and suffering, physical damages and mental and emotional trauma;

53. N.F. is entitled to all the damages allowed under the law for the violation of her rights pled in this Complaint including, but not limited to, damages for emotional distress. The United States Supreme Court in Schultz v. Young Men's Christian Associates of the United States, 139 F.3d 286, 291 (1st Cir. 1998), suggested that in a suit under § 504, "damages for emotional distress [might] be justified to punish patent misbehavior or the deliberate infliction of humiliation.";

54. The plaintiffs reserve the right to amend the Complaint to seek other remedies allowed under the law such as injunction and/or specific performance should the facts justify such;

55. N.F. was subject to extreme corporal punishment which amounted to abuse and mistreatment, as well as humiliation and emotional/verbal abuse, and which was carried out by defendant Jones and the two (2) unidentified aids, and which was generally allowed to happen by and through the acts/omissions of the defendant BOE;

56. The defendant driver, Jones and the unidentified aids were employees/agents of defendant BOE whose duties included to protect and care for N.F. They all breached their duties

to N.F. by failing to protect her from abuse, mistreatment and extreme corporal punishment, and by subjecting her to physical abuse, mistreatment, verbal and emotional abuse and extreme corporal punishment;

57. The United States Supreme Court's decision in Franklin v. Gwinnett County Public Sch., 503 U.S. 60, 112 S. Ct. 1028, 117 L.Ed.2d 208 (1992), now provides the dispositive analysis for determining remedies available under acts like the Rehabilitation Act and the Americans with Disabilities Act. In Franklin, the Supreme Court reaffirmed the longstanding principle that "where legal rights have been invaded, and the Federal statute provides for a general right to sue for such invasion, Federal courts may use any available remedy to make good the law done." Franklin, 503 U.S. 60, 112 S.Ct. at 1033 (quoting Bell v. Hood, 327 U.S. 678, 684, 66 S.Ct. 773, 777, 90 L.Ed. 939 (1946));

58. As a proximate consequence of the defendants' violations of the requirements of §504 of the Rehabilitation Act and Title II of the Americans with Disabilities Act, separately and severally, minor plaintiff N.F. suffered injury and harm;

59. As a proximate consequence of the defendants' violations of the requirements of §504 of the Rehabilitation Act and Title II of the Americans with Disabilities Act, separately and severally, plaintiff Lakesha Renee Rice suffered damages and harm;

**WHEREFORE**, plaintiffs N.F. through her mother, next friend and legal guardian LaKesha Renee Rice and plaintiff Lakesha Renee Rice in her personal capacity, claim of the defendants Tuscaloosa City Board of Education and Samuel Jones, separately and severally, compensatory damages, punitive damages, attorney fees, costs and all other allowable recovery in such an amount and/or such a form as a jury or finder of fact determines to be reasonable under the circumstances and may award against the Defendants, separately and severally.

## COUNT II

### NEGLIGENCE/WANTONNESS

60. The Plaintiffs reallege and incorporate by reference each of the above preceding paragraphs with the same force and effect as fully set out in specific detail herein;

61. At all times pertinent hereto the defendant Jones was under a duty to administer only appropriate/reasonable punishment and/or correction and to refrain from and not use extreme corporal punishment upon N.F.;

62. Defendant Jones breached this duty;

8

63.     Defendant Jones was negligent/wanton/reckless/careless by and through the manner in which he inflicted corporal punishment upon N.F. on 01/29/2025;

64.     At all times pertinent hereto defendant Jones was acting within the line and scope of his employment/agency by/for the defendant BOE, and in accordance with his training and/or lack thereof;

65.     At all times pertinent hereto the unidentified aids, separately and severally, owed duties to N.F. as is/are more fully detailed above, and the unidentified aids, separately and severally, breached these duties and so acted in a negligent/wanton/reckless/careless manner by and through their acts/omissions as more fully detailed above;

66.     At all times pertinent hereto the unidentified aids, separately and severally, were acting within the line and scope of their employment/agency by/for the defendant BOE, and in accordance with their training and/or lack thereof;

67.     At all times pertinent hereto the defendant BOE owed duties to N.F. as are more fully detailed above;

68.     Defendant BOE breached these duties and which said breaches amount to negligence/wantonness/recklessness/carelessness;

69.     The acts/omissions of defendants BOE and Jones and the unidentified aids, separately and severally, proximately caused injury and damages to N.F. as follows:

    a.     she was caused to suffer physical pain and suffering;

    b.     she was caused to suffer emotional anguish and suffering including, but not limited to fear, humiliation, confusion, anxiety and mental trauma;

    c.     she was caused to suffer changes to personality and behavior proximately related to the abuse of January 29, 2025, which have negatively impacted her ability to be "mainstreamed" and/or take advantage of educational opportunities, including opportunities associated therewith, and/or engage in society to the best of her abilities under her unfortunate circumstances;

    d.     her injuries and damages are permanent;

70.     As the proximate consequence of the acts/omissions outlined above LaKesha Renee Rice, in her personal capacity, has been caused to incur damages related to N.F.'s diminished participation in school and/or other activities associated therewith, and which have put the burden on LaKesha Renee Rice to transport N.F. and/or to spend more time caring for N.F. because of N.F.'s inability to engage in activities, and which has negatively impacted Lakesha Renee Rice's ability to earn a living and/or provide care to her other children. LaKesha Renee Rice has also been caused to suffer emotional anguish and distress including but not limited to fear, anxiety, frustration, exhaustion;

**WHEREFORE**, plaintiffs N.F. by and through her mother, next friend and legal guardian LaKesha Renee Rice, and Lakesha Renee Rice in her individual capacity, claim of the defendants Tuscaloosa City Board of Education and Samuel L. Jones, separately and severally, compensatory damages, punitive damages, attorney fees, costs and all other allowable recovery in such an amount and/or in such a form as a jury or finder of fact determines to be reasonable under the circumstances and may award against the Defendants, separately and severally.

## COUNT III

### NEGLIGENT/WANTON HIRING/RETENTION/TRAINING/SUPERVISION

71. The Plaintiffs reallege and incorporate by reference each of the above preceding paragraphs with the same force and effect as fully set out in specific detail herein;

72. At all times pertinent hereto the defendant BOE owed a duty to plaintiff N.F. and all other children in the Tuscaloosa City School system diagnosed with physical/mental/emotional/developmental disabilities to reasonably/adequately hire and/or train and/or monitor and/or retain employees whose duties include supervising and/or caring for and/or transporting these students;

73. The defendant BOE breached these duties and which said acts/omissions amount to negligence/wantonness/recklessness/carelessness;

74. The defendant BOE negligently/wantonly/recklessly/carelessly failed and/or refused to reasonably/adequately hire, retain, train, monitor and/or supervise defendant Jones and also the unidentified aids, separately and severally;

75. The defendant BOE's negligent/wanton/reckless/careless acts/omissions was/is the proximate cause of the injuries and damages suffered by N.F. and her mother and caretaker LaKesha Renee Rice as are more fully described herein above;

**WHEREFORE**, plaintiffs N.F. by and through her mother, next friend and legal guardian LaKesha Renee Rice, and Lakesha Renee Rice in her individual capacity claim of the defendant Tuscaloosa City Board of Education compensatory damages, punitive damages, attorney fees, costs and all other allowable recovery in such an amount and/or in such a form as a jury or finder of fact determines to be reasonable under the circumstances and may award against the Defendants, separately and severally.

# COUNT V

## RETALIATION UNDER REHABILITATION ACT AND AMERICANS WITH DISABILITIES ACT

76.     The Plaintiffs reallege and incorporate by reference each of the above preceding paragraphs with the same force and effect as fully set out in specific detail herein;

77.     The ADA expressly prohibits retaliation by private or public entities where an individual has opposed any act or practice as unlawful under the ADA. See, e.g., 42 U.S.C. § 12203; 28 C.F.R. § 35.134; 28 C.F.R. § 36.206; 29 C.F.R. § 1630.12;

78.     Likewise, Section 504 of the Rehabilitation Act specifically prohibits retaliation. It incorporates the anti-retaliation provision of Title VI of the Civil Rights Act of 1964. The anti-retaliation provision of Title VI incorporated by section 504 states:

> No recipient or other person shall intimidate, threaten, coerce, or discriminate against any individual for the purpose of interfering with any right or privilege secured by Section 601 of [the Civil Rights] Act or this part, or because he has made a complaint, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this part.

34 C.F.R. § 100.7(e);

79.     It is a violation of Section 504 of the Rehabilitation Act and Title II of the ADA to intimidate, threaten, coerce, or discriminate against an individual who has engaged in a protected activity. Protected activities include filing a complaint, testifying, assisting in, or participating in an investigation or hearing under Rehabilitation Act or the ADA;

80.     Judge Dubina, writing for the Eleventh Circuit, recognized the fear of retaliation that family members of the disabled have in making complaints about abuse or neglect. "Complainants, particularly staff and sometimes family members, may prefer to remain anonymous for fear of overt or subtle retaliation." Alabama Disabilities Advocacy Program v. J.S. Tarwater Developmental Center, 97 F.3d 492, 498 (11th Cir. 1996);

81.     The defendant BOE, through agents/employees, has threatened and/or attempted to intimidate Lakesha Renee Rice in her employment at Southview Elementary School, and by threatening to disallow N.F. participation in further schooling and/or programs to which N.F. would otherwise enjoy and/or be entitled. These actions amount to retaliation against both plaintiffs because of their seeking to hold the defendants accountable;

82.     The defendant BOE, through agents/employees, has also retaliated against both defendants by and through failing/refusing to provide the minor plaintiff N.F. with an I.E.P. to

which she would otherwise be entitled, and which said I.E.P. would provide the minor plaintiff N.F. with transportation to and from school each day;

83. The ADA's anti-retaliation provisions do not preclude a disabled child's parents from pursuing a claim on behalf of the child after adverse actions by another. Atlanta Independent School System v. S.F. ex rel. M.F., 740 F.Supp.2d 1335, 1349 (N.D. Ga. 2010); see also Ms. H. v. Montgomery County Bd. of Educ., 784 F.Supp.2d 1247 (M.D. Ala. 2001) (holding that a parent has a private right of action to sue on behalf of their minor child under § 504). A parent has a private right of action to sue a school system for violating §504. See, e.g., Arline v. Sch. Bd. of Nassau County., 772 F.2d 759, 760 n.1 (11th Cir. 1985) (citing Jones v. Metro. Atlanta Rapid Transp. Auth., 681 F.2d 1376, 1377 n.1 (11th Cir. 1982));

84. An individual has standing to sue for retaliation pursuant to § 504 of the Rehabilitation Act when he/she is retaliated against for advocating for the rights of the disabled, even if the advocate is not himself disabled. Barker v. Riverside County Office of Edu., 584 F.3d 821 (9th Cir. 2009). Because § 504 incorporates the anti-retaliation provisions of Title VII of the Civil Rights Act of 1964, an individual cannot be intimidated, threatened, coerced, discriminated against, or retaliated against by any entity or person for making a complaint, or for testifying, assisting or participating in any manner in an investigation, proceeding, or hearing. The court reasoned that "Congress recognized that disabled individuals may require assistance from others to defend their rights." Id. at 827;

85. The actions of defendant BOE constitute clear violations of well-established anti-retaliation provisions designed for the protection of disabled persons and their advocates. N.F. and LaKesha Renee Rice are entitled to the protections of the anti-retaliation provisions. See, e.g., Barker v. Riverside County Office of Education, Case No. 07-56313 (9th Cir. 2009);

86. The claim of retaliation under the Americans with Disabilities Act and the Rehabilitation Act, is brought against defendant BOE, a local school system for the actions of its employees/agents. Retaliation claims are not limited to public entities. The Americans with Disabilities Act and the Rehabilitation Act even allow for retaliation claims against individuals. See, e.g., Shotz v. City of Plantation, 344 F.3d 1161, 1164 (11th Cir. 2003) (holding that retaliation against an individual advocating for a disabled person is actionable under the ADA's anti-retaliation provisions); see also, 42 U.S.C. § 12203 (1995). The Court in Shotz also held that individuals may be sued for violating the ADA's anti-retaliation provisions, including retaliation against advocates for the disabled. Id. at 1179-80;

87. As a proximate consequence of the violation of the anti-retaliation provisions of the Americans with Disabilities Act and the Rehabilitation Act N.F. and her mother, legal guardian and caretaker have both suffered injury and harm as contemplated under the statutes;

**WHEREFORE**, plaintiffs N.F. by and through her mother, next friend and legal guardian LaKesha Renee Rice, and Lakesha Renee Rice in her individual capacity claim of the defendants Tuscaloosa City Board of Education compensatory damages, punitive damages, attorney fees, costs and all other allowable recovery in such an amount and/or in such a form as a

jury or finder of fact determines to be reasonable under the circumstances and may award against the Defendants, separately and severally

88. The Plaintiffs request a trial by jury of all issues so triable in the case.

                                Respectfully Submitted,

                                */s/ J. Flint Liddon*
                                J. Flint Liddon (asb-9019-n75j)

Of Counsel:                       /s/ *James R. Morgan*
Morgan, Morgan & Liddon.      James R. Morgan (asb-5774-n71j)
1605 Richard Arrington Jr Blvd S
Birmingham, Alabama 35205
flint@jmorganpc.com
jim@jmorganpc.com
Telephone:  (205) 918-0808
Facsimile:   (205) 918-0807

                                **Jury Demand**

          **PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY**

                                */s/ J. Flint Liddon*
                                J. Flint Liddon

                                /s/ *James R. Morgan*
                                James R. Morgan

**PLEASE SERVE DEFENDANT BY SPECIAL PROCESS SERVER AS FOLLOWS:**

Samuel L Jones
228 30th Street East
Tuscaloosa, AL 35405

Tuscaloosa City Board of Education
c/o Superintendent Dr. Mike Daria, Ed. D.
1210 Almon Avenue
Tuscaloosa, AL 35401

                      **PLEASE SERVE SUMMONS AND COMPLAINT**